RECORD NO. 13-4137

In The
# United States Court of Appeals
For The Fourth Circuit

**UNITED STATES OF AMERICA,**

*Plaintiff – Appellee,*

v.

**WILLIAM ALLEN RONE, a/k/a Tweet,**

*Defendant – Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
AT GREENSBORO

---

**BRIEF OF APPELLANT**

---

Charles L. White, II
ATTORNEY AT LAW
330 South Greene Street, Suite 302
Greensboro, North Carolina 27401
(336) 378-2746

*Counsel for Appellant*

THE LEX GROUP ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# TABLE OF CONTENTS

                                                           **Page**

TABLE OF AUTHORITIES ................................................................................ ii

I.    STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION .................................................................................... 1

II.   STATEMENT OF THE ISSUE PRESENTED FOR REVIEW ..................... 1

III.  STATEMENT OF THE CASE ..................................................................... 1

IV.  STATEMENT OF THE FACTS ................................................................... 2

V.   SUMMARY OF THE ARGUMENT ............................................................ 6

VI.  ARGUMENT ............................................................................................... 7

      A.   THE TRIAL COURT ERRED BY HOLDING THE DEFENDANT ACCOUNTABLE FOR DRUG QUANTITIES DERIVED SOLELY FROM HIS ALLEGED UNSWORN AND UNCORROBORATED STATEMENT THE TRUTH OF WHICH HE CONTESTED AT THE SENTENCING HEARING ............................................................................... 7

            Standard of Review ............................................................... 7

VII.  CONCLUSION .......................................................................................... 13

VIII. REQUEST FOR ORAL ARGUMENT ........................................................ 13

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## **CASES**

*United States v. Bowman*,
 926 F.2d 380 (4th Cir. 1991) ..................................................................................8

*United States v. Rhynes*,
 206 F.3d 349 (4th Cir. 1999) ..................................................................................7

*United States v. Stephens*,
 482 F.3d 669 (4th Cir. 2007) ..................................................................................7

*United States v. Terry*,
 916 F.2d 157 (4th Cir. 1990) ..................................................................................8

*United States v. Vaughn*,
 585 F.3d 1024 (7th Cir. 2007) ................................................................................8

*Wong Sun v. United States*,
 371 U.S. 471 (1963) ................................................................................................7

## **STATUTES**

18 U.S.C. § 922(g)(1) ........................................................................................1, 2

18 U.S.C. § 924(a)(2) ........................................................................................1, 2

18 U.S.C. § 3231 ....................................................................................................1

21 U.S.C. § 841(b)(1)(A) ......................................................................................1

21 U.S.C. § 841(b)(1)(C) .................................................................................1, 2

21 U.S.C. § 846 .....................................................................................................1

28 U.S.C. § 1291 ...................................................................................................1

**GUIDELINE**

U.S.S.G. § 6A1.3..................................................................................................8

# I. STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Count Seven of the indictment charges the defendant with a violation of 21 U.S.C. § 841(b)(1)(C), distribution of approximately 27 grams of a mixture and substance containing a detectable amount of cocaine base. Count Eight of the indictment charges him with a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), felon in possession of a firearm.

The District Court properly exercised jurisdiction pursuant to 18 U.S.C. § 3231. Judgment was entered on February 20, 2013. Notice of Appeal was filed on February 23, 2013. Jurisdiction lies with this Court pursuant to 28 U.S.C. § 1291.

# II. STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

**A. WHETHER THE TRIAL COURT ERRED BY HOLDING THE DEFENDANT ACCOUNTABLE FOR DRUG QUANTITIES DERIVED SOLELY FROM HIS ALLEGED UNSWORN AND UNCORROBORATED STATEMENT THE TRUTH OF WHICH HE CONTESTED AT THE SENTENCING HEARING**

# III. STATEMENT OF THE CASE

Proceedings in the District Court.

On May 31, 2012, a federal grand jury sitting in the Middle District of North Carolina returned a twelve count indictment naming the defendant in Counts One, Three, Four, Five, Seven and Eight. Count One charges him with a violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A), conspiracy to

1

distribute 280 grams or more of a mixture and substance containing a detectable amount of cocaine base. Counts Three, Four, Five and Seven charge him with violations of Title 21, United States Code, Section 841(b)(1)(C), distribution of a mixture and substance containing a detectable amount of cocaine base; and Count Eight charges him with a violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2), felon in possession of a firearm.

On October 4, 2012, pursuant to a plea agreement, Rone entered pleas of guilty to Counts Seven and Eight of the indictment. Those pleas were accepted by the Court.

On February 7, 2013 a sentencing hearing was held before the Honorable Thomas D. Schroeder, United States District Judge for the Middle District of North Carolina. The defendant was sentenced to an active term of imprisonment of 168 months as to Count Seven and a concurrent term of 120 months as to Count Eight. The remaining counts of the indictment naming the defendant were dismissed. This appeal was timely filed.

## IV. STATEMENT OF THE FACTS

It is undisputed that on September 13, 2011, a confidential informant (CI), working at the direction of the Chapel Hill Police Department and the Bureau of Alcohol, Tobacco, Firearms and Explosives, purchased 25.3 grams of cocaine base from the defendant in the parking lot of a McDonald's, located at 409 Franklin

2

Street in Chapel Hill, North Carolina and on September 14, 2011 and the same CI purchased a Mossberg 12 gauge shotgun from the defendant at a residence located at 1113 Walter Clark Drive in Hillsborough, North Carolina. J.A. Vol. II, p. 97.

The Presentence Report (PSR) found that after he had been apprehended, the defendant told law enforcement officers that from early 2008 until June or July of 2011, he had purchased an average of two ounces of crack cocaine a week from Willie Louis Robinson, Jr., a/k/a/ "Quack." J.A. Vol. II, p. 99. It is undisputed that the correct name of the individual known as "Quack" is Lewis Robinson, Jr., the son of alleged co-conspirator, Willie Louis Robinson and that he is the person to whom the alleged statement referred. J.A. Vol. I, pp. 25-26. Based solely upon that statement, the PSR held the defendant accountable for 7.6 kilograms of crack cocaine as relevant conduct establishing his Base Offense Level at 36. J.A. Vol. II, p. 99. The defendant objected to the attribution of that quantity of crack cocaine to his relevant conduct and denied ever purchasing crack cocaine from Lewis Robinson, Jr. J.A. Vol. II, p. 115. The PSR did not address the six (6) grams of cocaine base alleged in Counts Three, Four and Five of the indictment, but the defendant did not deny his responsibility for those amounts. J.A. Vol. I, p. 53.

At the sentencing hearing, Agent Harold H. McCluney of the Bureau of Alcohol Tobacco and Firearms testified that in November of 2011 he and other officers confronted the defendant with the fact that they had photographed him

3

selling a firearm to a confidential informant. He was not arrested at that time and he was invited to be interviewed in an effort to convince him to become a confidential informant himself. J.A. Vol. I, pp. 18-19. Agent McCluney testified that the defendant agreed to be interviewed and during that interview about one week later, he informed the officers that from early 2008 until June or July of 2011, he had purchased an average of two ounces of crack cocaine per week from Lewis Robinson, Jr. J.A. Vol. I, p. 20. He testified that the defendant also agreed to become a confidential informant for law enforcement during that interview, but later he told the officers that he would not follow through. J.A. Vol. I, p. 22.

Lewis Robinson, Jr. was arrested on unrelated state drug charges in 2007 and released on bond. He was convicted in state court and sentenced to prison in June of 2011. J.A. Vol. I, p. 21. While Robinson was serving his sentence in state prison, Agent McCluney talked with him about his alleged transactions with the defendant. Robinson denied any knowledge of the transactions and refused to be interviewed any further. He was not under federal indictment, nor was he the subject of any federal investigation at the time of that interview. J.A. Vol. I, p. 28.

Agent McCluney testified that, based upon his training and experience, a drug dealer processing two ounces of crack cocaine per week would profit roughly Three Thousand Dollar ($3,000) per week. J.A. Vol. I, pp. 24-25.

Ms. Carmen Liggins testified on behalf of the defendant that she is his longtime partner and the mother of four of his six children, all of whom lived with them. From 2007 until defendant's arrest, they lived together in modest rental homes. She worked as a hairstylist and the defendant did landscaping and rock work with a family member. He also tried to develop a football team designed to direct young men away from a life on the streets. They both worked hard, yet they still struggled financially. Eventually, they were evicted from their home, because they could not pay the rent. J.A. Vol. I, pp. 31-32.

The defendant took the stand and flatly denied any drug dealings with Lewis Robinson, Jr. J.A. Vol. I, p. 34. He stated that during the interview in November, he told Agent McCluney that he would cooperate as an informant, but chose not do so. During the interview, he expressed "opinions" which he defined as what he thought the facts were having grown up with Robinson and other individuals about whom the officers were questioning him. He stated that he did not affirmatively offer any information, he only agreed with what the agents suggested in order to help himself and his family.

Mr. Rone testified that his life would have been very different had he been involved in the business of buying and selling crack cocaine at the rate of two ounces a week for over three years. Instead, he worked hard at various jobs during

5

the period of time in question and still was forced to move out of a number of homes, being unable to pay the rent. J.A. Vol. I, pp. 37-38.

After hearing the evidence and arguments of counsel, the trial court overruled defendant's objection and adopted the findings of the PSR as facts. J.A. Vol. I, p. 61.

## V. SUMMARY OF THE ARGUMENT

In calculating the defendant's advisory guideline range, the trial court, over his objection, improperly held him accountable for 7.6 kilograms of cocaine base as part of the relevant conduct. The only evidence offered by the government to support that finding was an unsworn, inherently unreliable statement the defendant allegedly made to law enforcement officers. The statement was uncorroborated in any way. The other party named in the statement denied any knowledge of the transactions described. The defendant denied the truth of the statement under oath at the sentencing hearing. The facts described in the statement are inconsistent with the life-style the defendant and his family lived during the relevant time.

# VI. ARGUMENT

A. **THE TRIAL COURT ERRED BY HOLDING THE DEFENDANT ACCOUNTABLE FOR DRUG QUANTITIES DERIVED SOLELY FROM HIS ALLEGED UNSWORN AND UNCORROBORATED STATEMENT THE TRUTH OF WHICH HE CONTESTED AT THE SENTENCING HEARING**

Standard of Review:

The standard of review is abuse of discretion as it relates to the trial court's assessment of the reliability of hearsay evidence and clear error for the trial court's determination of relevant drug quantities. *United States v. Rhynes*, 206 F.3d 349, 383 (4th Cir. 1999) (Internal citations omitted).

It is well-settled that a criminal conviction may not rest solely upon an uncorroborated confession. *Wong Sun v. United States*, 371 U.S. 471, 488-89, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Absence of sufficient corroboration for a "naked confession" will even meet the heavy burden a defendant must overcome to successfully challenge the sufficiency of evidence upon which a jury relied to return a unanimous verdict of guilty at trial. *United States v. Stephens*, 482 F.3d 669, 673 (4th Cir. 2007). The burden of proving drug quantities for sentencing purposes is by a preponderance of the evidence, but there still must be some indicia of reliability before such uncorroborated statements may be used to enhance punishment levels under the advisory guidelines. To support any contested sentencing factor, the trial court is not bound by the rules of evidence, but the

7

information it may consider must have "sufficient indicia of reliability to support its probable accuracy." United States Sentencing Commission, <u>Guidelines Manual</u>, § 6A1.3. (Nov., 2012).

Appellate courts have held that an uncorroborated statement by a defendant can be sufficient to establish drug quantities. *See*, *e.g.*, *United States v. Vaughn*, 585 F.3d 1024 (7th Cir. 2007). However, the evidence upon which a court may base its findings must be reliable. *See United States v. Terry*, 916 F.2d 157, 160 (4th Cir. 1990). While corroboration is clearly one way to establish reliability, even uncorroborated hearsay statements may be relied upon by the court, *provided* that there are sufficient indicia of reliability. *United States v. Bowman*, 926 F.2d 380 (4th Cir. 1991). No such indicia of reliability exist in the case at bar.

Agent Harold H. McCluney of the Bureau of Alcohol Tobacco and Firearms testified that the defendant told him in an interview that he had purchased an average of two ounces of crack cocaine per week from an individual named Lewis Robinson, Jr. from early 2008 until June or July of 2011. J.A. Vol. I, p. 20. The testimony did not purport to reflect the defendant's own words. The interview took place at the agent's office, yet if it was recorded in any way, no recordings were introduced at the hearing. J.A. Vol. I, p. 19. No written statement by the defendant was introduced, nor was there any written summary of the conversation submitted into evidence. There was no evidence that any law enforcement agency

recovered any controlled substances in connection with the alleged transactions. There was no evidence that the defendant possessed any large sum of money, drug records, ledgers or other paraphernalia. The trial court found that the agent's testimony that a statement was made was credible, but made no finding as to its reliability with regard to the truth of its contents. J.A. Vol. I, p. 59. The trial court erroneously accepted the truth of the matter asserted in the statement. Not only was there no corroborating evidence offered to support that conclusion, there was abundant evidence challenging it.

Willie Robinson, Jr., the person who allegedly made the sales in question, was interviewed by Agent McCluney and denied any knowledge of drug transactions with the defendant. J.A. Vol. I, p. 28. Robinson was in state custody on unrelated drug charges at the time of the interview and was not under investigation for those transactions or for any other purpose. *Id.* He would have had no incentive to lie to the agent and his denial of his involvement was not challenged at the sentencing hearing. At the time of the hearing, Robinson was still in state custody and readily available to testify on behalf of the government to support the truth of the statement. J.A. Vol. I, p. 56. He was not called upon to do so.

The defendant took the stand and flatly denied the truth of the statement. He testified unequivocally that he had never had any illegal drug dealings with

Robinson. J.A. Vol. I, p. 34. He did not deny making a statement which could have been interpreted as reported by Agent McCluney, he simply asserted that the allegations as reported were not true.

The circumstances surrounding the interview render the statement inherently unreliable. The defendant had recently been apprehended and confronted with a photograph of himself selling a firearm to a confidential informant to whom he had also sold crack cocaine. At the time, the agents were trying to convince him to become a confidential informant himself. J.A. Vol. I, pp. 18, 28. He stated that he was understandably upset and "not himself" at the time of the interview. He was simply agreeing with whatever the officers asked him about and not vouching for the truthfulness of his answers. He was expressing his opinions at what the truth was based upon his general knowledge of the persons involved with whom he had grown up in a small town. He was doing whatever he could do to help himself and his family. J.A. Vol. I, p. 36. He testified, "I'm not stating that anything that I agreed was true. I just thought that I was helping myself by agreeing." J.A. Vol. I, p. 36.

On cross-examination, Agent McCluney eventually admitted that without any express promises, it was clear to the defendant that providing assistance would inure to his benefit. J.A. Vol. I, p. 28. Any statement alleging substantial past drug dealing activities would clearly enhance his ability to be of assistance in the

eyes of law enforcement for cooperation purposes. Such a statement is inherently unreliable under such circumstances.

Another aspect which renders his sworn testimony more reliable than his unsworn statement is the fact that the only other significant representation he made in the interview turned out to be simply untrue. He told the agents that he was willing to become a confidential informant, yet he did not do so. J.A. Vol. I, p. 34. Agent McCluney characterized that discrepancy as a change of heart on the defendant's behalf, but there is no indication in the record that the defendant ever intended to cooperate. J.A. Vol. I, pp. 27-28. On the contrary, he expressed strong feelings in opposition to cooperating. He said, "I mean, you know, telling on somebody just to get yourself out of trouble is not the right thing to do." He testified that he did not want to teach his children that it was. He wanted them to respect him. J.A. Vol. I, pp. 44-45.

The statement is also inconsistent with the uncontroverted evidence of the lifestyle the defendant and his family were leading. Agent McCluney testified that, based upon his training and experience, a person processing two ounces of crack cocaine a week would realize a profit of roughly Three Thousand Dollars ($3,000.00) per week. J.A. Vol. I, p. 24-25. The defendant and the mother of four of his children offered uncontroverted testimony that during the period of time in question, they were working hard, living a modest lifestyle, yet still struggling

11

financially to the point of being evicted from their home. J.A. Vol. I, p. 31. There was no evidence that the defendant enjoyed a lavish lifestyle, purchased cars or other property or had saved any large amounts of money. In contrast, the uncontroverted evidence was that he and the mother of his children worked hard, yet they were still barely able to make ends meet.

The mere timing of the allegations also defies credibility. The evidence clearly established that Lewis Robinson, Jr. was arrested in 2007 on state drug trafficking charges and was convicted in June of 2011. J.A. Vol. I, p. 21. Thus, he was on pretrial release for drug charges during the entire period of time in which the defendant's statement would have him selling over seven kilograms of cocaine to one customer alone. Indeed, if the statement is truly accurate, he was selling cocaine to the defendant in this action during his trial in May or June of 2011.

In summary, the statement upon which the trial court relied carries absolutely no indicia of reliability. It was not corroborated in any way. Its accuracy was specifically denied by both Mr. Robinson and the defendant. It was made under inherently unreliable circumstances. It was inconsistent with the uncontroverted facts concerning the lifestyle the defendant was leading, and it was simply illogical in light of Mr. Robinson's legal situation. The trial court abused its discretion by deeming such testimony to be reliable and committed clear error by relying upon it to establish the defendant's base offense level.

## VII. CONCLUSION

For the reasons stated herein, Defendant-Appellant respectfully requests that the sentences imposed in this matter be stricken and that cause be remanded to the District Court for resentencing.

## VIII. REQUEST FOR ORAL ARGUMENT

The Appellant respectfully requests oral argument.

Respectfully Submitted,

CHARLES L. WHITE

/s/ Charles L. White
Attorney at Law
Post Office Box 9518
Greensboro, North Carolina  27429
(336) 378-2746 – Telephone
(336) 378-2749 – Facsimile
cleroy@mindspring.com

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ X ] this brief contains [*2,954*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [   ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

   [   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: July 22, 2013                    /s/ Charles L. White
                                   *Counsel for Appellant*

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 22nd day of July, 2013, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Sandra J. Hairston
> OFFICE OF THE U.S. ATTORNEY
> 101 South Edgeworth Street
> Greensboro, North Carolina 27401
> (336) 333-5351
>
> *Counsel for Appellee*

I further certify that on this 22nd day of July, 2013, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court and a copy of the Sealed Volume of the Joint Appendix to be served, via UPS Ground Transportation, upon counsel for the Appellee, at the above address.

/s/ Charles L. White
*Counsel for Appellant*